## TURNER v. PARKER. (No. 12167.)

Court of Civil Appeals of Texas. Fort Worth.
Jan. 19, 1929.

Taylor, Muse & Taylor, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

BUCK, J. On November 19, 1926, J. E. Parker filed suit in the Seventy-Eighth district court of Wichita county against J. H. Turner, on a promissory note, dated March 10, 1926, in the sum of $4,600, due four months after date, payable to J. E. Parker at Iowa Park, Tex., with interest at the rate of 8 per cent. per annum from date, and with the usu-

al attorney's fee, and asking for a judgment for the principal of the note, interest, and attorney's fees. To these pleadings J. H. Turner filed an answer on January 31, 1927. Said answer consisted of a general demurrer. a general denial, and a special answer setting up a contract entered into by Parker on the one side and M. L. May and J. H. Turner on the other. This contract, referred to in Turner's answer, referred to the fact that Parker had conveyed to M. L. May and J. H. Turner a certain oil and gas lease on 20 acres of land in Archer county, being more particularly described as lot 2, block 121, American Tribune New Colony lands. The said contract further provided:

"Whereas, as additional consideration not mentioned in said assignment, the said M. L. May and J. H. Turner further agree to drill for the said James E. Parker a well at any location selected by the said James E. Parker in Archer or Wichita County, Texas, to a depth of Sixteen hundred fifty (1,650) feet unless oil is found in paying quantities at a lesser depth satisfactory to the said James E. Parker.

"Now, therefore, we, the said M. L. May and J. H. Turner bind and obligate ourselves to drill said well aforesaid for the said James E. Parker at our own cost and expense except the same James E. Parker shall furnish the casing, tubing and rods and other equipment necessary to complete said well in the event an oil sand is reached and casing is used. The said James E. Parker shall notify us thirty (30) days in advance of the location upon which the said well is desired, and we agree within said thirty (30) days to begin operations for the commencing of said well and to prosecute the same with due and reasonable diligence until the same is completed. In the event we fail to comply with this contract, we agree to pay to the said James E. Parker, as his damage of the breach thereof, the sum equal to the amount of the cost of drilling said well."

This contract was signed by James E. Parker, J. H. Turner, and M. L. May, on March 27, 1924. Turner and May were partners in oil operations in Archer and other counties.

The well was not drilled, as provided in the contract, and subsequently J. H. Turner gave to James E. Parker a note for $4,600, the estimated cost of drilling the well. Prior to the giving of the note, Parker demanded of Turner and May that the well be drilled at a location in Wichita county. Suit was filed on the note, and judgment was obtained for $4,600, together with interest, costs, and attorneys' fees. This judgment was affirmed by the Court of Civil Appeals at Amarillo, reported in 4 S.W.(2d) 639. A writ of error to the Supreme Court was refused.

On December 3, 1928, J. H. Turner filed what is styled a bill of review, in the district court of Wichita county, where the case of Parker v. Turner was instituted. He set up the facts heretofore stated, and further pleaded:

That he employed J. S. Dickey, a lawyer of Wichita Falls, to defend him. That plaintiff in the bill of review hereinbefore noted, hereinafter styled plaintiff, believed that Dickey was a good lawyer and competent mentally to defend said suit, and mentally able to understand the nature of the suit and the nature of the defenses which plaintiff had to said original suit, and to plead such defenses and to establish the same by the evidence which plaintiff in this suit had to the original suit filed. That plaintiff told said Dickey that the note was given as an accommodation note to enable Parker to raise money thereon, and that it was not intended as an evidence of indebtedness of Turner to Parker, but, when said note had been used by Parker for the purpose of raising money and the obligation incurred by the hypothecation thereof by Parker, the note was to be returned to Turner. That he further told Dickey that it was agreed between him and Parker that in no event would he be liable for more than one-half of the cost of drilling the well in case the well should not be drilled by the firm of Turner & May, and that therefore he was not liable for more than one-half of the note subsequently given by him to Parker. That said Dickey told plaintiff that he had talked with Parker's attorney, T. R. Boone, and that the said attorney agreed that in no event would he ask for more than one-half of the face value of the note, interest, costs of suit, and attorneys' fees. That Dickey told him that said Boone agreed that his contention as to being liable for only one-half of the note was founded on fact and truth. That therefore he did not make M. L. May a party defendant, inasmuch as, by the statement Dickey made to him as to Boone's agreement, he did not think that said May was a necessary or proper party.

That at the time of the employment of Dickey as his attorney, he did not know that Dickey was mentally unbalanced and not capable of properly representing him, and not capable of understanding what was necessary to plead and to prove in said cause. That plaintiff himself was a man ignorant of law and of trial procedure, and depended on Dickey entirely to advise him and to represent him in the trial of said cause, and gave to Dickey all of the facts pertaining to said cause, as to the execution and delivery of said contract as heretofore set out, as well as the execution of said note sued upon, and informed him that in no event was he to be liable for more than one-half of the said note. He further pleaded that the provision in the contract aforesaid between Parker on the one side and Turner & May on the other, that the well was to be drilled either in Archer or Wichita county, was a mistake, and Wichita county had been inserted in said contract by a mistake, and that said Dickey informed him

that all he had to do was to plead a mutual mistake in this respect, and that the insertion of Wichita county in the contract as one of the counties where the well was to be drilled was a mutual mistake. That Dickey informed plaintiff that he would plead as a defense such mutual mistake, and could defeat said note by so pleading. That he further informed plaintiff that the note was an accommodation paper and without consideration, and that he could defeat the same. That, as a matter of fact, at the time of employment of Dickey by plaintiff, and during the entire trial, including the appeal to the Court of Civil Appeals, and the application for writ of error to the Supreme Court, said Dickey was of unsound mind, and not capable of understanding the issues which should have been drawn in the pleadings, and that said Dickey did not plead the mutual mistake, and did not plead that in no event was Turner liable for more than one-half of the cost of drilling said well, nor was he liable for more than one-half of the note given in lieu of said drilling contract. That said Dickey instructed plaintiff to secure for him a cashier's draft for $1,900, informing the plaintiff that he had pleaded that plaintiff was only liable for one-half of the cost of drilling said well, which would be about $1,900, and he wanted to deposit with the clerk said draft to pay this amount in case the judgment should go against plaintiff. That plaintiff did procure and deliver to said Dickey a cashier's draft in the sum of $1,900 to be deposited with the clerk for the purpose of paying off the amount which might be found due Parker.

That, if he had known that Dickey was not mentally capable of representing him properly in said suit of Parker v. Turner, he would have employed some one else. That, in truth and in fact at the time of employment of Dickey, said Dickey was under such mental derangement as to wholly render him unable to understand the nature and extent of the defenses submitted to him by plaintiff, and was mentally unable to understand how to plead and prove such defenses.

Plaintiff further pleaded that, by reason of the insanity of his attorney, he was denied his "day in court," and that the judgment obtained against him theretofore in said district court and later affirmed by the Court of Civil Appeals was unjust and unwarranted, and should be set aside. He tendered a supersedeas bond in the sum of $1,400, being more than twice the amount of the judgment theretofore obtained against him, including interest, costs, and attorneys' fees, and prayed that the same be filed, pending a further consideration of said bill of review. He further prayed that, in the event said supersedeas bond did not lie, a temporary writ of injunction be issued, restraining the defendant Parker from collecting or attempting to collect the judgment theretofore obtained, and restraining the sheriff of Wichita county from

prosecuting a writ of execution in the attempt to collect said judgment during the pendency of this suit.

The bill of review is quite lengthy, covering some 18 pages, but we believe we have briefly stated all of the essential elements thereof.

The application was heard by the district court, and evidence was introduced, and the court held as follows: "The court after hearing said cause is of the opinion that the review plaintiff, J. H. Turner, is not entitled to either order, and is of the opinion that his prayer for the suspension of the execution on the judgment as well as an injunction against said execution, should be in all things denied."

From this judgment plaintiff has appealed.

Opinion.

The only statutory bill of review is found in article 2236, Codification (Rev. St.) of 1925. It provides:

"In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by attorney of his own selection:

"1. The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was rendered. The parties adversely interested in such judgment shall be cited as in other cases.

"2. Execution on such judgment shall not be suspended unless the party applying therefor shall give a good and sufficient bond payable to the plaintiff in the judgment, in double the amount of the judgment or value of the property adjudged, to be approved by the clerk, and conditioned that the party will prosecute his petition for new trial to effect and will perform such judgment as may be rendered by the court should its decision be against him.

"3. If property has been sold under the judgment and execution before the process was suspended, the defendant shall not recover the property so sold, but shall have judgment against the plaintiff in the judgment for the proceeds of such sale."

Certainly appellant's case does not come within this article, for he was duly personally cited, and was present in court at the time the judgment was entered against him. The bill of review statute was passed in 1846, soon after Texas became a state of the Union. It has been consistently held that the statute is not applicable except where the defendant was cited by publication and where he has not appeared in person or by attorney of his own selection. Chrisman v. Miller, 15 Tex. 159; Doty v. Moore, 16 Tex. 592; Yturri v. McLeod, 26 Tex. 84; Lewis v. City of San Antonio, 26 Tex. 316; Cundiff v. Teague, 46 Tex. 475.

Since appellant did not come within the statute, he is not entitled to the remedies

therein provided, and the trial court did not err in refusing to allow the supersedeas bond to be filed, as provided for in said statute.

As to the prayer for injunction, we are not prepared to say that the trial court erred in refusing to grant the temporary writ or restraining order. If the so-called bill of review be considered a sufficient plea in an equitable proceeding to vacate a judgment theretofore entered by the district court, and affirmed by the Court of Civil Appeals, and a writ of error denied by the Supreme Court, or if sufficient as an application for the common-law writ of coram nobis, which we do not definitely decide, still we think, under the state of the testimony, that it was within the discretion of the trial court to grant or deny said application for a temporary injunction, and that the exercise of his discretion, under the facts shown, is not subject to review. An injunction is a harsh writ, and should not be awarded, where evidence is heard upon the grounds for the writ, unless the applicant shows himself. by good and sufficient proof to be entitled thereto. A preliminary injunction should not issue unless a prima facie case is made out. 32 Corpus Juris, p. 351, § 582.

The defendant Parker denied all of the allegations upon which plaintiff relied for reopening and vacating the judgment theretofore rendered, and specially denied that Wichita county, mentioned in the contract as one of the counties in which the well might, under the contract, be drilled, or a demand made by him for the drilling thereof, was inserted in the contract by mutual mistake. He testified that it was understood and agreed by him and by Turner & May that he had the right to demand that the well be drilled in Wichita county. He further testified that he did not agree with Dickey that Turner was bound for only one-half of the note, or for only one-half of the drilling expenses. He further denied that the note was given as an accommodation paper. His attorney, T. R. Boone, denied that he agreed with Dickey that he would ask for judgment for only one-half of the note, and denied that he agreed that Wichita county was inserted in the contract by mutual mistake, or by any sort of mistake.

It was further shown that Judge E. R. Wilson, a former district judge and a member of the firm of Carrigan, Brittain, Morgan & King, assisted Dickey in the trial of the case of Parker v. Turner, and there was no claim that Judge Wilson was insane or was not a capable lawyer. It is true that Judge Wilson testified for the plaintiff, and stated that it was his recollection that the pleadings had been drawn when he entered the case. He testified that it was a little hazy in his mind, but that it seemed to him that Turner's answer had been filed before he got into the case; that he did not remember dictating any answer, or part of any answer, that was used in the case; that Mr. Dickey got up the pleadings, it was his remenbrance, and that he was of the opinion that Dickey had every defensive pleading included in the answer that was necessary; that he made objection to the court as to the introduction of testimony he thought inadvisable; that at that time Dickey was not insane, so far as he knew; that Dickey conducted the lawsuit as a sane lawyer or a person with a sound mind; that he did not notice anything out of the ordinary in the manner and the way that he proceeded with the lawsuit; that he had seen numerous lawyers try lawsuits; that he had sat on the district bench, and was district attorney for a short time before that; that he was county attorney for Denton county for six years.

The proceedings in the trial of the original lawsuit were introduced in this case, and they showed that Judge Wilson objected to certain testimony offered by the plaintiff in that suit with reference to the note being an accommodation paper. The Court of Civil Appeals at Amarillo mentions in their opinion the question of the note given being an accommodation note. Hence it was evident that that issue was made. Both Mr. Turner and Mrs. Turner testified on the original suit, and both declared that the note was given as an accommodation to Parker, with no understanding that Turner should be bound except as an accommodation maker to third parties. Further, Mrs. Turner testified as to various conversations had between Parker and Turner with reference to drilling the well, and that Mr. Turner did not feel that it was his place to drill the well after he and May had dissolved partnership.

Taking the evidence as a whole, we do not feel that we are authorized and justified in disturbing the judgment of the trial court. Hence the judgment is affirmed. This action does not in any manner interfere with the right of appellant to prosecute his action for a reopening and vacation of the judgment, but we merely affirm the judgment rendered by the trial court denying the suspension of the judgment, by means of the filing of the supersedeas bond and the execution of the judgment, and denying the injunctive writ prayed for.